UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

NYDIA NIEVES,

    Plaintiff,

v.

POPULAR, INC, et. al.,

    Defendants.

Civil No. 12-1266 (JAF)

**OPINION AND ORDER**

We must decide whether an employee's evidence of discrimination is sufficient to withstand her employer's motion for summary judgment in this disability discrimination case.

**I.**

**Background**

Because we must view all facts in the light most favorable to the non-moving party when considering a summary judgment motion, to the extent that any facts are disputed, the facts set forth below represent Plaintiff's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, where Plaintiff's asserted facts do not properly comply with Local Rule 56(c) and (e), we deem Defendants' properly-supported statements as admitted.  See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly).

The plaintiff, Nydia Nieves, was a long-time employee of Banco Popular. (Docket No. 1.) In 2005, Nieves began work in a new role as a front-desk receptionist in one of Banco Popular's branch offices. Nieves encountered one difficulty with her new assignment: The bank, for security and aesthetic reasons, decided to enclose her computer within her desk—instead of placing it at eye level. This placement of her computer Nieves alleges was unique to her branch office alone. In 2010, Nieves requested that the computer be repositioned so that her workstation would be more comfortable. Sometime around the start of 2011, Nieves approached her supervisor and asked that the computer monitor be repositioned because its placement inside of the desk was causing her back and neck pain. Because Nieves was potentially injured in the workplace, a Banco Popular supervisor referred her to the Puerto Rico State Insurance Fund for an evaluation of her injuries—specifically, pain in her neck and shoulders and diminished vision. It is worth noting that in 2008, Nieves had voluntarily identified herself as an individual with a disability—high blood pressure—using a Banco Popular internal computer system. Nieves asserts that, over time, the placement of her computer led to a general deterioration in her health. Neither this fact nor any other, however, is conclusive that Nieves suffered from a disability at the time of the alleged incidents.

On March 8, 2011, the State Insurance Fund determined that Nieves needed medical treatment for her physical conditions. Nieves was evaluated by a State Insurance Fund physical therapist, an ophthalmologist, a radiologist, a physiatrist, and a general practitioner. Nieves was allowed to leave during working hours to attend her medical appointments. After little more than a month of treatment, Dr. Rafael Rivera-Linares, Nieves' treating physician, found that Nieves had no ongoing limitations in her shoulder or neck injuries. This evaluation was confirmed by Dr. Rivera-Linares in eight

subsequent evaluations, spanning from July of 2011 to May of 2012. However, as a long-term preventive measure, Dr. Rivera requested the State Insurance Fund's occupational therapy unit evaluate Nieves' workstation.

Banco Popular tried several times to expedite the State Insurance Fund's review of Nieves' workstation. A few months after contacting the State Insurance Fund, Banco Popular followed-up and learned that no recommendations had been placed in Nieves' file. After repeated requests, sometime in July of 2011, a State Insurance Fund employee offered to send an evaluator to assess Nieves' workstation and determine if any accommodations would be necessary.

On November 15, 2011, the State Insurance Fund sent an occupational therapist to evaluate Nieves' workstation for the first time. Shortly thereafter, the occupational therapist issued a report recommending a number of modifications to Nieves' workstation, including: Repositioning Nieves' computer monitor; relocating Nieves' workstation from the foyer of the branch to a secure area inside of the branch's main office; installing privacy protections to protect any sensitive information that might now be visible on her repositioned computer monitor; providing Nieves with wrist rests, a new ergonomic desk chair and an accompanying footrest; and repositioning her computer mouse. Nieves was also asked to perform a stretching regimen in both the morning and the afternoon. Banco Popular received the State Insurance Fund report on January 18, 2012. On that same date, a human resource specialist with Banco Popular emailed Nieves with a request that she authorize the disclosure of her protected health information, in order to allow for the implementation of the recommended workplace modifications. Nieves returned the signed authorization form on January 27, 2012.

On January 30, 2012, Banco Popular's occupational safety and health consultant visited Nieves' workstation for an evaluation. The Banco Popular consultant confirmed the State Insurance Fund's recommendations and forwarded her evaluation to Banco Popular's Safety and Health Officer for procurement and requisition of the recommended items. On March 12, 2012, a purchase order was filed with Banco Popular's Procurement Department. All of the modifications made to Nieves' workstation were completed by April 25, 2012.

On August 25, 2011, Nieves brought a complaint to the EEOC against Banco Popular de Puerto Rico. On April 20, 2012, Nieves filed suit against Popular, Inc., alleging that she was discriminated against on account of her alleged disability, and that Popular, Inc., failed to accommodate her condition in violation of both federal and Puerto Rico law. Banco Popular moved to dismiss the complaint. (Docket No. 9.) On July 9, 2012, Nieves filed a motion to substitute a party and to dismiss the complaint as to Popular, Inc. (Docket No. 10.) Banco Popular opposed. (Docket No. 13.) On July 18, 2012, Nieves made a motion to amend her original complaint and insert the party name "Banco Popular de Puerto Rico" instead of "Popular, Inc." (Docket No. 11.) We denied Banco Popular's motion to dismiss and granted Nieves' motion to amend her original complaint. (Docket No. 22.) Nieves filed an amended complaint, (Docket No. 33); Banco Popular moved for summary judgment. (Docket No. 43.)

## II.

## **Legal Standard**

The defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If Nieves successfully rebuts the defendants' showing, we then decide whether a reasonable juror could find for Nieves on each of her claims when all reasonable inferences from the evidence are drawn in her favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

## III.

## **Discussion**

The basis for Nieves' discrimination claim is Banco Popular's failure to accommodate her disability, which is analytically distinct from a claim of disparate treatment under the ADA. Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 112 (1st Cir. 2006) (Under the ADA, a failure to accommodate claim has a different set of requirements from a discriminatory discharge claim.)

The ADA requires employers to provide reasonable accommodations for their qualified employees' known physical or mental limitations. 42 U.S.C. § 12112(b)(5)(A). To survive summary judgment on her failure to provide accommodation claim, Nieves must show that: (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) despite knowing of her disability, Banco Popular failed to provide reasonable accommodation. Henry v. United Bank, 686 F.3d 50, 59-60 (1st Cir. 2012). Here, Banco Popular is

entitled to summary judgment on Nieves' claim because she cannot establish a *prima-facie* case for failure to provide accommodation.

An individual is disabled for purposes of the ADA if she has a known or documented physical or mental impairment that substantially limits one or more major life activities. Roman-Oliveras v. Puerto Rico Elec. Power Authority, 655 F.3d 43, 48 (1st Cir. 2011). Nieves claims that, because of the positioning of her workstation, she developed cervico trapecio myosistis and bilateral shoulder calcification tendinitis and that these injuries substantially limited two major life activities: Sitting and standing. (Docket No. 50-1 at 9.) We think the record before us is devoid of any evidence supporting this contention.

The First Circuit employs a three-part analytical scheme to determine whether an impairment qualifies as a disability under the ADA. McDonough v. Donahoe, 673 F.3d 41, 47 (1st Cir. 2012). Nieves must establish: That she suffers from a physical or mental impairment; that her impairment affects life activities that are of "central importance to daily life;" and that her impairment "substantially limits" the identified major life activity. Ramos-Echevarria v. Pichis, Inc. 659 F.3d 182, 187 (1st Cir. 2011). To be substantially limiting, an impairment must render a person unable to perform a major life activity that an otherwise average person can perform. Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010) (quotations omitted). Whether an individual's alleged disability substantially limits one or more of her major life activities is evaluated on a case-by-case basis. See 29 U.S.C. § 706(2).

Nieves has not pointed us to any evidence to establish that she was substantially limited in the major life activities of sitting or standing. Instead, the record indicates that Nieves was able to perform her work tasks satisfactorily both before and after Banco

Popular provided the requested accommodations. Moreover, during her deposition, Nieves conceded that she is able to perform a litany of major life activities that undoubtedly involve some form of sitting and standing: Walking, sweeping, doing laundry, baking, driving, cooking, gardening, bathing, caring for her elderly mother and two young sons, exercising, and dancing. (Docket No. 68-1 at 300-10.) We have no testimony from medical professionals indicating that Nieves' injuries substantially impaired a major life activity. Having failed to show any evidence of impairment to a major life activity, Nieves cannot qualify as disabled under the ADA.

Even if Nieves suffered from a disability as defined by the ADA, no reasonable jury could find that Banco Popular failed to grant her request for a reasonable accommodation.

Banco Popular fully implemented the State Insurance Fund's recommendations, including purchasing a new chair, wrist rests, and a foot rest. (Docket No. 68-1 at 466-7). During her deposition, Nieves conceded that Banco Popular granted her requests for accommodation, including the relocation of her computer monitor. (Id.)

The issue then is whether Banco Popular took too long in granting Nieves' request for accommodation. Nieves contends that Banco Popular did not engage in an interactive process once it learned the extent of her back and neck injuries because it took too long to comply with her request.

Under the ADA, an employer's unreasonable delay in providing reasonable accommodation to disabled employee may constitute a failure to provide such accommodations. Americans with Disabilities Act of 1990, § 102(b)(5)(A), 42 U.S.C.A. § 12112(b)(5)(A). An unreasonable delay can indicate that an employer has unlawfully refused to participate in the interactive process regarding a requested accommodation. It

is worth noting, however, that, "while an employer who fails to engage in the interactive process runs a serious risk that it will erroneously overlook an opportunity to accommodate a statutorily disabled employee, and thereby violate the ADA, failure to engage in the interactive process, in itself, does not constitute such a violation." Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 194 (3d Cir.2009) (internal quotation marks and citation omitted).

To advance this argument, Nieves relies on Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62 (1st Cir.2010), in which the First Circuit found a condominium association's year-long delay in granting a request for handicapped parking spaces constituted a denial of a request for a reasonable accommodation. 620 F.3d at 68-69. But, Astralis is distinguishable and does not command the result in this case. First, in Astralis, a Fair Housing Act case, the First Circuit held that a delay in making an accommodation *could* violate the FHA—not that it necessarily did. The First Circuit merely denied the employer summary judgment on that point. Most importantly, in Astralis, the condominium association delayed for a year *without justification*: For example, they took little or no action in the face of the accommodation request for handicapped parking spaces and, in fact, promised the spaces but then never provided them. Here, Banco Popular spent a year actively processing a request for accommodation, even pursuing the State Insurance Fund when it did not initially receive a timely response; in Astralis, by contrast, the condominium association spent a year ignoring the plaintiff''s request for accommodation.

Nieves' claims of unnecessary delay are also undermined by the fact that she did not inform her employer of her allege disability in her initial requests to have her work station adjusted. That is problematic because under the ADA, an employer need not

provide accommodations where it does not know an employee has a disability. Freadman v. Metropolitan Property and Cas. Ins. Co., 484 F.3d 91, 102 (1st Cir.2007) (employee's request for reasonable accommodation "(1) must be sufficiently direct and specific, and (2) must explain how the accommodation requested is linked to some disability) (citations and internal quotations omitted); see also Reed v. LePage Bakeries, Inc., 244 F.3d 254, 261 (1st Cir.2001) ("The employer has no duty to divine the need for a special accommodation where the employee merely makes a mundane request for a change at the workplace."). The ADA requires requests for accommodation to be direct and specific, and the employee must make clear that the accommodation is needed for her disability. Estades-Negroni v. Associates Corp. of North America, 377 F.3d 58, 64 (1st Cir. 2004); see also Mole v. Buckhorn Rubber Prods., 165 F.3d 1212, 1218 (8th Cir.1999) ("[An employee] cannot 'expect the employer to read [her] mind and know [she] secretly wanted a particular accommodation and [then] sue the employer for not providing it.'" (second, third, and fourth alterations in original).

Here, Nieves submitted her initial requests to have her monitor repositioned without reference to any injury, on-going condition, or disability. Then, when Nieves complained to supervisors about neck and back pain in early 2011, Banco Popular referred Nieves to the State Insurance Fund for treatment and evaluation of a workplace injury. The State Insurance Fund took months to respond, which delayed Nieves' request for accommodation. Banco Popular can hardly be punished for the delay of a state agency they consulted in an effort to obtain a recommendation appropriate to Nieves' circumstances. That delay was beyond Banco Popular's control and does not evidence a breakdown in the interactive process.

**B.     Retaliation Claim Under the ADA**

Nieves also claims that: One of her supervisors admonished her over email; her branch manager "shunned" her; Banco Popular punished her by docking her pay when she failed to provide a medical certificate after visiting the doctor; and she was additionally punished by having her printer relocated. (Docket 50 at 4-5.) Nieves claims these incidents reflect unlawful retaliation for "protected activity" under the ADA.

The ADA prohibits an employer from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful by this chapter," or who has filed administrative proceedings to protest such an action as Nieves did in this case. 42 U.S.C. § 12203(a). To make out a *prima-facie* case for retaliation under the ADA, the plaintiff must show (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that a causal connection existed between the protected activity and the adverse employment action. Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 35 (1st Cir. 2010). Nieves fails to establish prong two of a *prima-facie* case.

Nieves has not produced any evidence that she suffered an adverse employment decision. Nieves must show a "materially adverse" change in the terms of her employment. Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) ("A materially adverse change in the terms and conditions of employment 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)).

Nieves does not contest the defendants' assertion that she fails to establish prong two of a *prima-facie* case. Instead, relying on Burlington Northern & Santa Fe Railway Co. v. White, 547 U.S. 53 (2006), she argues that her fear of economic retaliation forced

her to accept substandard conditions.  The defendants are right to suggest that Nieves' reliance on Burlington is misplaced.  In Burlington, the nature of the acts that the Court recognized as materially adverse as to dissuade "a reasonable worker from making or supporting a charge of discrimination" were not mere petty slights, minor annoyances, antipathy, snubbing or shunning from co-workers and supervisors. Burlington at 360.  As the defendants point out, Burlington was decided on particular acts that had direct impact on the employee's terms and conditions of employment, such as an unjustified reassignment of duties and suspension without pay.  Nieves makes no claim that her duties were curtailed, her pay was suspended or her employment was terminated.

A sharply-worded admonishment or a disproving look from a supervisor does not make for a materially adverse change in employment.  See, e.g., Marrero, 304 F.3d at 23. ("Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.").  Despite her filing with the EEOC, Nieves was able to keep the same position within the same job classification at the same branch that she had worked at since 2008 until her resignation earlier this year.

Finally, Nieves alleges violations of rights afforded by the Puerto Rico Civil Code. (Docket No. 1 at 25-7.)  Specifically, Plaintiff alleges violations of Law 100 and Articles 1802 and 1803 of the Puerto Rico Civil Code, and violations of Article II, Sections One, Four, and Six of the Constitution of Puerto Rico.  (Id.)  The complaint does not make clear what action constitutes the basis for these violations.  Plaintiff is alleging tort violations under Article 1802 of the Puerto Rico Civil Code.  (Docket No. 68 at 26-27.)

We have discretion to decline supplemental jurisdiction over the remaining Commonwealth law claims, since we have dismissed all of the claims over which we

have original jurisdiction.  See 28 U.S.C. § 1367(c)(3); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) ("if the federal law claims are dismissed before trial … the state claims should be dismissed as well).  In exercising our discretion under § 1367(c), we must consider the issues of "judicial economy, convenience, fairness, and comity."  Che v. Massachusetts Bay Transp. Authority, 342 F.3d 31, 37 (1st Cir. 2003).  Having considered these factors, we decline to exercise supplemental jurisdiction over Plaintiff's Commonwealth law claims, and we dismiss them without prejudice.

## IV.

## Conclusion

For the foregoing reasons, Defendants' summary judgment motion, (Docket No. 43), is **GRANTED.**  The plaintiff's federal law claims are **DISMISSED WITH PREJUDICE**.  The plaintiff's Commonwealth law claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 21st day of November, 2013.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE